(No. 16233.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RICHARD TYLER, Plaintiff in Error.

*Opinion filed February 17, 1925.*

1. CRIMINAL LAW—*jury must settle questions of fact in identification of the accused.* It is the special province of the jury to settle all questions of fact, and where the case in a prosecution for robbery rests upon the identification of the accused and the parties robbed positively identify their assailant, although they have not been required to pick him out of a group of persons, the verdict and judgment of conviction will not be disturbed.

2. SAME—*defendant may be identified without being placed in a group of persons.* There is no requirement of the law that the prosecution must have a defendant placed among a group of persons for the purpose of testing whether or not witnesses are able to point him out as the guilty party.

DEYOUNG, J., took no part.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. FREDERIC R. DEYOUNG, Judge, presiding.

W. G. ANDERSON, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and CLYDE C. FISHER, of counsel,) for the People.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, Richard Tyler, was jointly indicted with Harold Swart in the criminal court of Cook county for the crime of robbery while armed with a dangerous weapon, a revolver. On a separate trial he was found guilty on March 10, 1924, and sentenced to the penitentiary for an indefinite term. He has sued out this writ of error to review the record.

Only two witnesses testified for the People,—Francis J. Campbell, general agent for the Internal Revenue Department, and Samuel Howard, chief deputy United States marshal for the northern district of Illinois, both of Chicago. Campbell testified in substance as follows: On August 9, 1923, about three o'clock in the morning, he and Howard were in an automobile on their way home, traveling north on Sheridan road. While driving up Sheridan road he noticed a machine in their rear driving very quietly. They were driving slowly and this machine continued to remain behind them. They slowed down to let it pass them, and as it passed he noticed that it was an Oldsmobile maroon car with two young fellows sitting in the front seat. They drove alongside of the other machine for a short ways and did not pay any more attention to it. When they got to Bryn Mawr avenue they speeded up a bit and passed it. They turned off from Sheridan road into Rosemont avenue and proceeded about a block and a half. As they turned the corner one of their brakes stuck, and Campbell got out and went to the rear of the machine and noticed the other machine coming up. He waved to the fellows in it to go to one side, as his machine was in the middle of the road. Instead of continuing on, the other machine stopped behind them. The two fellows jumped out, one on each side of their machine, came up to him and asked what was the matter, and at the same time one of

them, Tyler, leveled a gun at him. They then walked him around to the right and in the shadow of his machine, and there Tyler pointed the gun at him and told him to give Tyler his money or anything he had. He told Tyler to take the gun out of his neck and then gave him $15 in United States currency and Tyler put it in his pocket. Tyler then pointed the gun at Howard, who was in the machine, and asked him how much money he had. He heard Howard, say, "I have some currency," and Howard opened up his bill-fold and gave him some money. Tyler asked him if he had any more, and Howard replied that he had some currency in his pocket and gave Tyler that. Tyler then said, "What else have you got?" Howard said, "I have got some change." Tyler said he did not want that and asked Howard what else he had. Howard replied that that was all. Tyler then said, "I will look for myself," and with that he stepped onto the running-board of the car and threw back Howard's coat and said, "What is this?" Howard tried to talk him out of taking the star Howard had on his vest. Tyler then said, "You dirty son-of-a-bitch, you get that off or I will blow your brains out." After that, while Howard was sitting in the machine, Tyler walked Campbell to the other side and put him into the front seat and told him to drive like hell, and that if he looked around he would blow his brains out. The place where they were robbed was in Chicago, Cook county, Illinois.

Howard testified substantially to the same facts related by Campbell. He further testified that he was wearing an officer's star with a diamond set in it, of the value of $2000, that had been presented to him by the employees in his office and his friends, which Tyler took after uttering some oath, saying that if he did not take the star off quickly he would put a hole through his head. Tyler also took from him his bill-fold and took out of it a fifty-dollar and a twenty-dollar bill of lawful currency of the United States

and returned to him the bill-fold. Tyler also took from him four single dollars, lawful money of the United States, which he had in his pocket, but did not take the change in his pocket which he told Tyler he had.

On cross-examination both Campbell and Howard testified that they had never seen either Tyler or Swart prior to the robbery and had only seen Tyler once or twice since the robbery and before the trial. Neither of them had ever seen Tyler in a group of men or was ever asked to pick Tyler out from such a group. Howard described Tyler as being about five feet six or eight inches tall and weighing about 170 pounds, and said that he might be taller than he had testified. He also said that he wore a cap and had dark hair at the time of the robbery, and that he probably did not get a good look at his hair that night. Campbell described Tyler as being about five feet six or eight inches tall and wore a checkered suit, and that he did not have a cap on when he walked around to the rear of the machine, and before that he did not know whether he had a cap on. He did not see him change from a hat to a cap, and his best recollection is that Tyler did not wear a cap that night. He did not notice what kind of a hat Tyler had on. He did not know whether it was a straw hat or a slouch hat.

Tyler testified that he is twenty-three years old, is five feet ten and one-half inches tall, and was about the same size August 9, 1923. He further testified that he did not have a revolver on that date on Rosemont avenue, and denied categorically all the testimony of the State's witnesses as to his having taken any part in the robbery; that he never saw the star alleged to have been taken from Howard; that he had lived in Chicago previous to the alleged hold-up and was in the cigar business with his father at Forty-seventh street and Ingleside avenue; that Swart is his cousin, but that he had not seen him since Christmas, 1922, previous to his arrest; that he left Chicago for New Orleans with a man named Murphy and was there arrested,

and returned to Chicago voluntarily and without extradition papers. He admitted that in July, 1919, he pleaded guilty to a charge of burglary before Judge Kavanagh in the criminal court of Cook county and was sentenced to the penitentiary on that plea.

The sole reason assigned by plaintiff in error for a reversal of the judgment is that he was not sufficiently identified by the witnesses as one of the robbers. He therefore argues that his guilt was not established by competent legal evidence beyond all reasonable doubt and that the verdict and judgment were not justified. Both Campbell and Howard positively identified him and on the trial pointed him out in the court room as one of the robbers. The only substantial difference between their testimony as to identification was on the question whether or not he on that night wore a hat or a cap. It was the judgment of Howard, positively expressed, that he wore a cap. Campbell expressed it as his opinion that he wore a hat but was not sure of the character of the hat; and his testimony clearly shows that he did not pay strict attention to his hat but his attention was called more directly to his clothing, while Howard's attention appears to have been directed particularly to the cap without giving any particular attention to his clothing. This evidence clearly warranted the verdict and judgment. It was the special province of the jury to settle all questions of fact in the case, and there is no good reason for disturbing the verdict and judgment. There is no requirement of the law that the State must have a defendant placed among a group of any number of men for the purpose of testing whether or not its witnesses and victims of the crime are able to point him out as the guilty party.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE DEYOUNG took no part in this decision.