(No. 21220.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANCIS REILLY, Plaintiff in Error.

*Opinion filed April 23, 1932.*

154

HAROLD LEVY, and EDWARD M. KEATING, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. JUSTICE ORR delivered the opinion of the court:

Francis Reilly was indicted, tried and found guilty by a jury in the criminal court of Cook county of robbery with a gun. Motions for a new trial and in arrest of judgment were overruled and the defendant was sentenced to the penitentiary. He has sued out this writ of error for a review of the record.

Numerous assignments of error are made, but only one is argued and briefed. Assignments of error not argued are waived. (*People* v. *Cobb,* 343 Ill. 78; *People* v. *Brown,* 325 id. 307.) The point relied upon by counsel for Reilly is that his guilt was not proved beyond a reasonable doubt because of his alleged doubtful and uncertain identification by witnesses for the People.

On August 21, 1931, at about 11:30 P. M., Arthur Heisman and Margaret Ogdon were held up and robbed by two armed men. At the time of the robbery Heisman and Miss Ogdon were seated in his Chrysler coupe, which was parked in front of Miss Ogdon's home, in Chicago. Two men came up to the car, one to each side, and with drawn pistols crowded themselves into the car with a statement, "This is a stick-up; move over." The man on Heisman's side steered the car with his left hand and with his right hand held a gun to Heisman's left side. The other man was sitting on Miss Ogdon's lap with a pistol in his hand. After driving for about two blocks Heisman and Miss Ogdon were forced out of the car. Heisman's pockets had been searched and his wrist-watch taken. The two

robbers then drove away with the car and it was not discovered until about five weeks afterward, when it was found in a private garage of a Mrs. Phau. When found the car was stripped of wheels, tires and all accessories.

On the question of identification, Heisman testified that he observed the man who had taken his wrist-watch during the period of about five minutes while he was driving the car and sitting at his left side. This man, he said, was the defendant Reilly, whom he pointed out in open court. He had previously identified Reilly at a police "show-up," and testified that when he first saw him he was sure Reilly was the man. Margaret Ogdon positively identified Reilly as the robber who sat in the driver's seat. She said he was in the car between five and ten minutes. The afternoon following the robbery she said she saw the man who had held her up the night before, pass by her home. When she saw him from the window she went out, but he was gone and she waited until he came past again. She then went to a store and called a police officer, who went with her to Reilly's home. Reilly was then called to the door, and Miss Ogdon there pointed him out to the officer as one of the robbers. She also went to the station and swore to the complaint for Reilly's arrest that same day.

Barbara Phau testified that Reilly had rented space in her garage "around the 25th of August;" that she did not see the car when it was brought into the garage but saw it afterwards, at which time the wheels were off and the battery and other accessories had been taken out. She reported this fact to the police and they came for the car. She testified that Reilly had paid her five dollars for rent of the garage and positively identified him in court. To negative the damaging effect of Mrs. Phau's testimony, attention was called to the fact that Reilly was in jail on August 25, but a review of her testimony shows that she did not definitely fix the date but said it was "around the 25th of August." Since Reilly was released on August 27 and

could have rented the garage that day the jury must have believed the testimony of Mrs. Phau. Her version was reinforced by the finding of Heisman's car in her garage, and her identification of Reilly was not shaken.

Some exception is taken by counsel for Reilly to the fact that at the police "show-up" Reilly was not picked out of a group of persons by Heisman but his name was called as he appeared on the platform. This objection would only affect the weight of Heisman's testimony and not its competency. There is no requirement of the law that a defendant must be placed among a group of persons for the purpose of testing the ability of a witness to point him out as the guilty party. (*People* v. *Tyler,* 316 Ill. 67.) Even without the positive identification by Heisman, there still remained the positive identification of Reilly by Miss Ogdon when she first saw him on the street, as well as the corroborative identification by Barbara Phau as the man who had rented her garage, in which Heisman's dismantled car was subsequently found by the police.

Reilly relied upon an alibi defense, most of his witnesses being related to him by blood or affinity. The sole issue presented to the jury was whether Reilly was one of the men who participated in the robbery. If the jury had believed the alibi witnesses they would have necessarily found Reilly not guilty. The determination of this issue was solely for the jury. *People* v. *Fisher,* 303 Ill. 594; *People* v. *Martin,* 304 id. 494; *People* v. *Stella,* 344 id. 589; *People* v. *Terracco,* 346 id. 423.

The record contains no material errors of law, and it cannot be said that under the evidence the jury were not justified in returning the verdict complained of.

The judgment of the criminal court of Cook county is accordingly affirmed.

*Judgment affirmed.*