(No. 27230.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* NATOMA DUSTIN, Plaintiff in Error.

*Opinion filed Nov. 16, 1943—Rehearing denied Jan. 12, 1944.*

MEYERS, SIEGAL, CHARLENS & SEYFARTH, (MORRIS GORDON MEYERS, of counsel,) all of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and JOSEPH A. POPE, all of Chicago, of counsel,) for the People.

Mr. JUSTICE FULTON delivered the opinion of the court:

The grand jury of Cook county returned an indictment in the criminal court of said county charging the plaintiff in error with obtaining money by means of the confidence game. The case was tried before a jury, which returned a verdict finding the defendant guilty. Motions for new trial and in arrest of judgment were overruled by the trial court, and plaintiff in error sentenced to the Woman's Reformatory at Dwight, Illinois, for an indeterminate term of from one to ten years. The plaintiff in error seeks to reverse the judgment and has brought the case to this court by writ of error.

She contends that the State failed to prove necessary material allegations contained in the indictment; that the verdict and judgment are contrary to the weight of the evidence; that the trial court erred in denying the motion

of the defendant to find the defendant not guilty at the close of the State's case; that the trial court erred in ruling that argument to the jury would not be permitted upon an essential matter in evidence; and that the court gave an erroneous instruction to the jury on the question of flight. The questions raised by the plaintiff in error require a statement of the leading facts in the record.

It appears from the testimony of Viola Sulima Zielinski, the complaining witness, that she owned and operated a tavern in Chicago at 1142 Noble street. At her place of business she met one Michael Bernard in March, 1939, and they later became intimate friends. Subsequently, in the summer of 1939 Bernard introduced Mrs. Zielinski to a Mrs. Lasky, representing her to be his aunt, and the trio met a number of times during the summer. Bernard and Mrs. Zielinski had developed an acquaintance which was considerably more than an ordinary friendship, and there was talk of their being married. On or about September 11, 1939, Mrs. Zielinski was invited to the home of Mrs. Lasky with Bernard for dinner. At the time Mrs. Lasky lived at 6537 Kenwood avenue. At this meeting Mrs. Lasky mentioned the fact that she was considering the purchase of a roadhouse and asked Mrs. Zielinski if she would care to go along and look the place over. Mrs. Zielinski assented and on September 11 Mrs. Zielinski, Mrs. Lasky and Bernard met by appointment and drove on Route 49 to Manteno, Illinois, where they saw the roadhouse. There was some conversation about the building costing the sum of $20,000. Mrs. Zielinski did not examine the property except to look at it from the car. On the return trip Mrs. Lasky said she would like to buy the building but that her money was tied up in a mortgage, and Bernard stated that he would help her all he could. When they arrived back in the city, Mrs. Lasky said she wanted to telephone the man that owned the road-house. She entered a building in the vicinity of Eighty-

ninth and Ashland, and after being gone a short time, returned to the car and stated to Bernard that someone else wanted to buy the roadhouse and they would have to hurry or they would lose out on a good buy. Bernard then said he would go to his bank about some money. Whereupon they drove to Sixty-third and Woodlawn where Bernard entered a bank, and shortly thereafter emerged with some money and said he had $10,000. Mrs. Lasky said that she was only able to get $5000 together at that time and that would leave them short about $5000. Mrs. Lasky then proposed to Mrs. Zielinski that since she was going to be in the family by marrying Bernard, that the three of them get together and buy the roadhouse and split the profit three ways. Mrs. Zielinski stated that she could not get $5000 together, but that she could get $4500. Bernard then displayed some papers and said that he could get the other $500 to make up the total of $20,000. They then went to 349 West Sixty-third street where Mrs. Lasky went into a bank and emerged with what she said was $5000, and asked Mrs. Zielinski to try to get her money together that day. Mrs. Zielinski then left Bernard and Mrs. Lasky and withdrew from her safety-deposit box at Ashland and Division streets the sum of $1700, and also went to a building and loan office and made a demand for an additional $2800, which was on deposit there, and which was evidenced by a note. On September 14 Mrs. Zielinski got her $2800 from the building and loan and gave to Mrs. Lasky the sum of $4500 in cash. Mrs. Lasky and Bernard then stated that they were going to see the person that owned the roadhouse. Whereupon all three drove to the vicinity of Sixty-seventh and Crandon. Mrs. Lasky told Mrs. Zielinski not to worry that she would make a nice piece of money when they resold the property. The car was stopped near a hotel when Bernard left stating that he was going up to bring the man down who owned the roadhouse property. In a few minutes he came down

with another man, who was introduced to Mrs. Zielinski. This other man stated that he had company upstairs and wanted to know if they objected to waiting a few minutes, and at the same time suggested that Mrs. Lasky go upstairs with him. Shortly thereafter Bernard told Mrs. Zielinski he was going to the corner for something and left Mrs. Zielinski in the car alone. She went into the hotel and waited in the lobby, but neither Bernard or Mrs. Lasky ever appeared. She waited for two hours and then sought to locate them in the vicinity of the hotel, but was unable to do so. The next time she saw Mrs. Lasky was in June, 1942, in Chicago, and she identified her as the plaintiff in error in this case. These are substantially the facts related by Mrs. Zielinski on the witness stand.

On the part of the plaintiff in error evidence was introduced tending to show that the plaintiff in error was in Florida during the entire month of September, the proof being made by one Louis C. Kempf and Felicia Dustin, the daughter of plaintiff in error. The plaintiff in error also testified in her own behalf and in addition to the alibi, denied that she had ever seen Viola Zielinski before and denied each and every essential part of the testimony of Mrs. Zielinski. One of the serious questions arising on the proof was the identification of plaintiff in error as Mrs. Lasky. However, Mrs. Zielinski stated positively that she was the woman whom she had met and known as Mrs. Lasky in 1939, and on rebuttal Mrs. Elizabeth Thomas, the owner of premises at 6537 Kenwood, identified plaintiff in error as the woman who rented a room for a week. It was at these premises that Mrs. Zielinski claims to have been entertained at dinner by Mrs. Lasky and Bernard.

The plaintiff in error strenuously contends that the State failed to prove necessary material allegations contained in the indictment. She shows that the date when the crime was committed as alleged in the indictment was September 14, 1939. The indictment was not returned by

the grand jury of Cook county until October 19, 1942. The total elapsed time was therefore three years, one month and five days. Every count of the indictment concluded with the allegation that during the greater portion of that period of time the defendant was not usually and publicly resident within the State of Illinois. It is on the latter clause that the failure of proof is claimed. It is conceded that all indictments for confidence game must be found within three years after the commission of the crime except where the party charged was not usually and publicly resident in the State during the period. (Ill. Rev. Stat. 1941, chap. 38, pars. 630 and 632.) During the course of the trial, when Mrs. Zielinski, the complaining witness, was on the stand the State developed the fact that a criminal prosecution was not actually instituted until September 11, 1942. Thereafter on redirect examination the State's Attorney sought to show the reason for delay, but his question, "What was the cause of the delay," was objected to by counsel for plaintiff in error. Thereupon followed a long discussion and colloquy between counsel for both parties and the court, all out of the presence of the jury. During his discussion counsel for defendant told the court that he expected to argue to the jury the fact that nothing was done between June, 1942, and September, 1942, when the proceedings were instituted. After hearing both sides, the court intimated that he would permit the witness to explain the reason for delay, if the counsel for defendant intended so to argue. The counsel for defendant thereupon stated: "I will desist from arguing any proposition with reference to the time of the complaint. * * * I will tell you now, Judge, that I will not say anything with reference to the time that the complaint was signed." Upon this promise of counsel for defendant the objection was sustained.

Later on in the trial the State called Mae Fox, a policewoman of the city of Chicago, for the purpose of showing

that the plaintiff in error had not been within the State of Illinois during the period, but had been confined in a penitentiary in Minnesota for approximately two years prior to being brought back to Illinois by said witness in June, 1942. Objection to this line of testimony was made by counsel for plaintiff in error. On a hearing outside the presence of the jury, counsel for defendant was anxious to keep from the jury any testimony concerning any time spent by plaintiff in error in a penal institution in Minnesota and her being brought back to Illinois for any other offense, and it was finally stipulated that the witness, Mae Fox, if called, would testify that she arrested the plaintiff in error in Minnesota and brought her back to Illinois. There were several items contained in the defendant's testimony to show that she had been absent from the State of Illinois for a sufficient length of time to toll the excess of time over the three years' limitation. The plaintiff in error and her daughter both testified, but not a word was said by either one as to where the defendant resided during the three-year period, except that plaintiff in error testified she was in Florida from September, 1939, to March, 1940. We believe the stipulation and waiver of counsel for plaintiff in error plus the affirmative testimony in the record for the defense was sufficient proof of the material part of the indictment about which complaint is made.

The plaintiff in error relies upon the cases of *People v. Ross,* 325 Ill. 417, and *People v. Stajduhar,* 335 Ill. 412, as supporting her contention, but these cases are not at all similar to the situation we have here. In the *Ross case* the only proof that the defendant was not usually and publicly resident within the State of Illinois during the disputed period was that of five police officers who testified that they had not seen defendant in the city of Chicago between December, 1919, and March, 1923. Some of these witnesses had some knowledge of the defendant and his whereabouts, but none of them knew where he lived nor

did any of them testify that they had made any effort to find his place of residence or his whereabouts at any time. The fact that these police officers had not seen this particular person in the city of Chicago did not tend to prove that he was not usually and publicly resident within the State of Illinois. In the *Stajduhar case* the State failed to prove that the defendant was not usually and publicly resident within this State since the commission of the crime. On the other hand, plenty of the affirmative proof taken showed that the defendant was within the State of Illinois at all times during the running of the statute of limitations. These two cases are not authority for the position of plaintiff in error in this case.

It is claimed by plaintiff in error that the opinion of this court in *People* v. *Botulinski,* 383 Ill. 608, filed on September 21, 1943, on the question of identification, bears a striking similarity to the present case. In the *Botulinski case* the witness identified the defendant at a showup where the only other persons present were the prosecuting witness and three police officers. The defendant was the only person at the showup for the witness to view. Such identification is not entitled to the same weight and credibility as where the witness picks out the accused from a number of persons brought before the witness. (*People* v. *Deal,* 357 Ill. 634.) In the case at bar the positive identification by the prosecuting witness and by Mrs. Elizabeth Thomas was sufficient to warrant the finding by the jury that the plaintiff in error was the same person who represented herself to Mrs. Zielinski as being Mrs. Lasky. Where a single witness gives testimony which is credible and the jury is convinced of the identity of the defendant and of his guilt beyond a reasonable doubt, the evidence may be sufficient to sustain a conviction. *People* v. *Cullotta,* 376 Ill. 333.

On the trial the plaintiff in error sought by every means possible to prevent the State from proving that the plain-

tiff in error spent approximately two years of the disputed period in a penitentiary in the State of Minnesota, and the fact that she had been arrested and brought back to the county of Cook to answer to another offense. It seems clear from the record that the court would have permitted this proof to go in evidence if it had not been for the stipulation and waivers made by counsel for plaintiff in error in order to secure a favorable ruling by the trial court on the admissibility of such evidence. Surely, the plaintiff in error is not entitled to take advantage of error, if there was any such, produced by her own conduct in the trial of the case.

The point made by plaintiff in error that the name of the prosecuting witness was stated differently in the indictment from her name as shown in the evidence does not contain any merit. At the time the indictment was drawn the complaining witness's name was Viola Sulima and it clearly stated her name at that time. After the return of the indictment Viola Sulima was married and her name became Viola Sulima Zielinski, and the record clearly shows that the name in the indictment and the name used at the time of the trial were of one and the same person.

The plaintiff in error also claims that the verdict and judgment are contrary to the weight of the evidence, and dwells at great length upon the carelessness of the prosecuting witness in the conduct of her business; minor discrepancies in her testimony and the uncertainty of the identification of the accused plaintiff in error. This case was tried before a jury whose duty it was to determine the credibility of the witnesses and the weight to be given the testimony. Without attempting to review and discuss the details of the case, it appears to us from the record that the prosecuting witness, Viola Sulima Zielinski, was the subject of a deliberate, well-planned, crafty swindle by one Michael Bernard and a certain Mrs. Lasky. Positive

testimony was introduced identifying the plaintiff in error as the person who posed as Mrs. Lasky.

From what has been said in this opinion it is clear that the State made out a *prima facie* case with its direct testimony, and therefore the trial court committed no error in denying the motion of plaintiff in error to direct a verdict of not guilty at the close of the State's case. The plaintiff in error further contends that the trial court erred in ruling that argument to the jury would not be permitted concerning the delay in bringing the prosecution between June and September of 1942, the same being essential matter in evidence in the record. The transcript of the testimony taken before the trial court by counsel for both parties shows that the counsel for defendant affirmatively and specifically promised the court that he would desist from arguing any question with reference to the time of the complaint, if the court would sustain his objection to the offer of the State to produce evidence as to the reason for the delay in instituting the prosecution. Under these circumstances, it is plain that the plaintiff in error is barred from asserting such right on this review.

The final complaint of the plaintiff in error is that the court gave to the jury an erroneous instruction as to the law. The particular instruction, intended to cover flight on the part of the defendant, was as follows:

"If the jury believe from the evidence beyond all reasonable doubt, that the crime charged was committed and that the defendant immediately after the commission of the crime charged fled and remained away until taken into custody, such flight is a proper circumstance to be considered in determining the guilt or innocence of the defendant."

It is assumed by plaintiff in error that the foregoing instruction asserts the truth of a controverted fact, and is therefore objectionable. While the facts concerning the

matter of flight in this case are controverted and one of the material elements of the proof, we feel that there was evidence in the record to show absence or flight from the State on the part of plaintiff in error. The instruction does not inform the jury that there was, or was not, flight by the defendant, but prefaces the instruction by saying that if it believes from the evidence beyond all reasonable doubt that the crime charged was committed and that the defendant immediately thereafter fled and remained away until taken into custody, it was a proper element for the jury to consider in determining the innocence or guilt of the defendant. In *People* v. *Pezutto*, 255 Ill. 583, cited by plaintiff in error, a similar instruction was held to be error because there was no evidence given on the trial as to where the plaintiffs in error were or what they were doing at the time the crime was committed. The record in this case affirmatively shows that after the money of the prosecuting witness was obtained, the plaintiff in error and her accomplice left the prosecuting witness and were never again seen until the summer of 1942. Similar instructions on flight have been many times approved by this court. (*People* v. *Wheeler*, 297 Ill. 289; *People* v. *Spaulding*, 309 Ill. 292; *People* v. *White*, 311 Ill. 356.) We find no error in the giving of said instruction.

Believing the jury had the power to determine in this case the credibility of the witnesses and the weight to be accorded to their testimony and that the questions in the case are largely questions of fact which are merely conflicting, this court will not substitute its judgment for that of the jury and the trial court. *People* v. *Ristau*, 363 Ill. 583.

The judgment of the trial court will, therefore, be affirmed.                              *Judgment affirmed.*