(No. 34814.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES CRENSHAW *et al.*, Plaintiffs in Error.

*Opinion filed January 23, 1959.*

Howard R. Barron, of Chicago, for plaintiffs in error.

Latham Castle, Attorney General, of Springfield, and Benjamin S. Adamowski, State's Attorney, of Chicago, (Fred G. Leach, William H. South, Francis X. Riley, and Edwin A. Strugala, of counsel,) for the People.

Mr. Chief Justice Daily delivered the opinion of the court:

An indictment returned to the criminal court of Cook County in July, 1953, charged Richard Riles, James Crenshaw, and Judson Griffin with the crime of armed robbery. After waiving a jury trial each man was found to be guilty of the charge upon hearing before the court. Crenshaw was sentenced to imprisonment in the penitentiary for a term of 10 to 15 years, while sentences of 5 to 10 years were imposed upon Riles and Griffin. Under the provisions of Rule 65—1(2) of this court, we have granted a joint petition of Griffin and Crenshaw for a writ of error to review the judgment of conviction. See: Ill. Rev. Stat. 1957, chap. 110, par. 101.65—1(2); *People* v. *Griffin,* 9 Ill.2d. 164.

Undisputed facts show that a retail store located at 1019 E. Forty-third Street in the city of Chicago was robbed by three Negro men on Saturday, July 18, 1953, at about 4:15 P.M. Present in the establishment were Richard Erman, a part owner, Harry Clorfine, a sales clerk, and James Burks, a 15-year-old stock boy. Clarence McGowan, also 15 years old, entered the store during the course of the robbery. The four persons named were tied up by the robbers and succeeded in freeing themselves only after the felons had departed taking money from the cash

register and a small quantity of merchandise. Police were summoned and, apparently on the basis of information obtained from the eyewitnesses, officer Patrick J. Rafferty prepared an offense report which stated the crime had been committed by three colored men and described two of them in detail.

Six days after the robbery, on July 24, 1953, officer Rafferty observed the three defendants in a vacant lot at Thirty-ninth Street and Lake Park Avenue and, after questioning them, placed them under arrest and took them to a police station. At the time, according to Rafferty, Riles was wearing a tan sport shirt and Griffin was clad in three or four of the items of clothing noted in the offense report. After first looking at what Rafferty described as "the books of likely complaint," he requested Erman and Clorfine to come to the station. The two men complied the same day and Erman, who testified he was shown a line-up of four Negro men, identified the three defendants as the men who had robbed the store. At the trial he testified that Griffin was then wearing the same jacket he had worn on the day of the crime. Clorfine, who viewed the men apart from Erman and at all times admitted that he saw only two of the robbers when the crime was committed, was shown only the three defendants at the police station and identified Riles and Crenshaw as the robbers he had seen. At the trial both men made courtroom identification of the respective men they had pointed out to the police. Defendants, for their part, at all times denied their guilt.

Burks and McGowan, the two 15-year-old eyewitnesses, were not called upon to make identification at the police station but did appear as witnesses at the trial. Burks, after stating it had been a long time since the robbery, (five months), testified he could not identify the defendants. McGowan, who was called as a court's witness, testified that two of the robbers were short and that one was

tall, but could only state that Griffin looked like the tall man. Although defendants attach great weight to the failure of the youthful witnesses to identify them, we have long been committed to the principle that the testimony of one witness as to identification, if positive and the witness credible, is sufficient to convict even though the testimony is contradicted by the accused. (*People* v. *Burts,* 13 Ill.2d 36; *People* v. *Williams,* 12 Ill.2d 80; *People* v. *Wilson,* 1 Ill.2d 178; *People* v. *Cullotta,* 276 Ill. 333.) Here both Clorfine and Erman made positive identification of Riles and Crenshaw, and Erman positively identified Griffin, only six days after the crime was committed. Nor, in view of their ages, do we see anything unusual or sinister in the circumstance that Burks and McGowan were not called to the police station, particularly when it appears that the adult eyewitnesses had made positive and unhesitating identification of the guilty persons.

At the trial Erman testified that Riles and Crenshaw were first to enter the store and that he walked to a clothes rack with the two men at his side when Riles asked to see a jacket. As the witness turned around from the rack, Riles had drawn a gun and ordered him to lie down on the floor behind a counter. When he complied Riles bound him in such a position that he was on his stomach with his face sideways and up, thus enabling him to see to the front. Suspended from the ceiling directly in front of Erman was a tie rack, about eight feet distant, and while prone on the floor he observed Griffin for a period of about thirty-five seconds as the latter removed a tie from the rack. It was stipulated in the record that Crenshaw was 58 years old, Griffin 24 years, and Riles 22, and it appears from the evidence that Griffin was tall in stature as compared with his companions. In this respect Erman testified it was the tall man who came to the tie rack, and that Crenshaw was short and an older man. Throughout his

testimony Erman repeatedly stated he was not certain about the clothing worn by the robbers, other than a powder-blue jacket worn by Griffin, but testified he was positive about their faces and remained unshaken in this conviction despite lengthy and critical cross-examination by three different counsel each representing one of the defendants.

Clorfine's testimony was that he saw Riles and Crenshaw enter the store and started to wait on them, but returned to the rear of the store when Erman reached them first. Shortly thereafter he saw Crenshaw, whom he described as a short and older man, looking at him through a clothes rack and, at the same time, observed Riles with a gun in his hand. Crenshaw then put a knife at his back, saying: "Don't look at me," tied him up, and took some money from his pocket. Later, according to the witness, Burks was also tied up, his head being bound to Clorfine's feet, and McGowan was then tied to Burks after the former had entered the store and asked to see the boss.

The stock boy, Burks, testified he saw two men enter the store, that he later saw one of the men with a gun, and the other a knife; that the man with the knife was a short man, and that it was the latter man who had tied up the witness and Clorfine. He also stated that he saw the man with the gun tying up Erman but said he was looking at the gun and paid no attention to the man's face. As previously related, he testified he could not identify any of the defendants as the men in question.

McGowan, who stated he was an eighth grade pupil, testified he saw three men as he entered the store, describing them as a tall man by the door, a short man by the cash register, and a short man at the rear of the store. He asked the man at the register where the boss was and was told he was out to lunch. The witness stated he waited for 15 to 20 minutes and was about to leave when the man at the register told him to take a necktie "to the other man in the store." When he complied, "the short man at the

rear of the store" tied him up with Burks and Clorfiine. Five minutes later McGowan heard the men leave the store, freed himself and the others, and remained to answer questions by the police. He testified he could identify the three men if he saw them again, and when asked if the men were in the courtroom, he stated: "The tall one, [indicating Griffin,] he looks like the one in the store. The other two, they look like them. I couldn't recognize the other two."

Defendants' defense consisted of a denial of the crime and of evidence establishing alibis. Griffin testified that, at the time of the robbery, he and Crenshaw were at the home of Griffin's grandmother, located at Paulina and Washbourne in the city of Chicago, miles from the scene of the crime. He related that he and Crenshaw had been en route to Seventeenth and Lake streets to meet a friend, James Williams, when they met Griffin's aunt who then informed him that his grandparents were ill and persuaded them to visit the grandparents' house some two blocks away. According to his further testimony, he and Crenshaw arrived for the visit about 4:00 to 4:10 P.M., remained for forty minutes, then returned to Twelfth Street where they had a sandwich before leaving for home. Crenshaw testified to the same facts, corroborating Griffin in all material respects. Although Riles is not a party to this proceeding for review, he too gave testimony of an alibi and it is to be noted that it in no manner involved Griffin or Crenshaw. The only other witness for the defense, except for witnesses offered in support of Riles's alibi, was Griffin's mother who testified that her parents lived at 1703 W. Washbourne, and that they were not at the trial because both were very ill.

Seeking a reversal of the judgment of conviction, Griffin and Crenshaw contend primarily that the evidence of the prosecution, when considered with the evidence of an alibi, fails to establish their guilt beyond a reasonable

doubt. More specifically, it is urged that identification evidence of the prosecution's witnesses was vague, inconsistent and uncertain, that conditions at the time of the robbery did not afford the eyewitnesses an opportunity to make definite identification, and that the identification made at the police station was accomplished under such circumstances as to render it totally unreliable. We, however, find no merit to the specific contentions made.

With respect to the identification procedures at the police station, defendants argue that the witnesses, Erman and Clorfine, had been told in advance by the police that the guilty parties were in custody, that Erman made identification only after viewing the defendants three different times, and that neither witness in fact viewed the defendants in a line-up with other men. While we do not construe the record as portraying the drastic conditions and circumstances represented by defendants' argument, it is enough to point out that the circumstances relied upon would not completely impair and destroy the evidence of identification, but would only affect its weight and credibility. There is no requirement in the law that an accused person must be placed among a group of persons for the purpose of testing the ability of a witness to identify him as the guilty person, (*People* v. *Vaughn,* 390 Ill. 360; *People* v. *Minor,* 388 Ill. 436; *People* v. *Reilly,* 348 Ill. 153,) and where an accused is not selected from a group, such fact does not render evidence of identification incompetent, but only affects its weight. (*People* v. *De Suno,* 354 Ill. 387; *People* v. *Barad,* 362 Ill. 584; *People* v. *Dustin,* 385 Ill. 68.) Similarly, where claim is made that identification was induced by police suggestion that the guilty party is in custody, we have stated such procedure does not completely destroy the evidence of identification, but affects only its weight and credibility. (*People* v. *Wilson,* 1 Ill.2d 178; *People* v. *Tomaszewski,* 406 Ill. 346; *People* v. *Sanders,* 357 Ill. 610.) Moreover, in the instant case, it is a contested ques-

tion as to whether or not the improper procedures claimed did in fact attend the identification of the defendants. Erman consistently testified he first viewed a group of four colored men, at which time he made his identification, and Clorfine consistently acknowledged that he had viewed only the three defendants. No testimony to the contrary was offered by defendants and conflict arises only from Rafferty's confusion as to whether it was Erman or Clorfine who viewed four men. In like manner there is no direct or positive evidence that the identifications were induced by police suggestions. Defendants infer it, rather, from Erman's testimony that he was told by Clorfine that the police had called and wanted them "to look at someone who had been picked up and matched the description we had given them." As opposed to this, Erman later testified he was not certain of the exact words Clorfine had spoken to him, and Rafferty stated his telephoned request had been only that Erman and Clorfine come to the station to look at some "likely suspects." On the state of the record, we cannot say that the identification procedures were such as to require a reversal, or that the trial court, whose function it was to determine who was telling the truth concerning such procedures, improperly took the identification evidence into consideration.

Nor do we find support for the claim that the testimony of the identifying witnesses was so vague, uncertain and inconsistent as to create a reasonable doubt of the defendants' guilt. (See: *People* v. *O'Hara,* 332 Ill. 436; *People* v. *Burr,* 356 Ill. 452.) As to Crenshaw, the record reveals that both Erman and Clorfine were afforded the opportunity to observe him close at hand during the course of the robbery, and that both identified him positively at the police station six days later and again at the trial. Both witnesses testified that Crenshaw was a short and older man and their description of his stature received partial corroboration from the testimony of Burks and McGowan.

Griffin, on the other hand, was identified positively by Erman who, under favorable conditions, observed him at the tie rack for a period of thirty-five seconds. In describing Griffin's appearance at the time of the robbery, Erman described him as being tall in stature and received corroboration from McGowan's testimony to the effect that Griffin looked like the tall man McGowan had observed in the store. We may consider too that Erman also identified Griffin within six days after the crime and was aided in his identification at the police station by the fact that Griffin was wearing the same jacket he had worn at the time of the robbery. Under the circumstances we do not find that the identification of either defendant was attended by the vagueness and uncertainty charged.

The claim that the identification evidence was inconsistent does not stem from any discrepancies within or between the testimony of the eyewitnesses themselves, but from apparent conflicts between their testimony on the one hand, and the testimony of officer Rafferty and his offense report on the other. For example, the notations made by Rafferty in the report described the jacket worn by Griffin as being gray, as opposed to Erman's testimony that it was powder blue, and stated Griffin was armed with a knife, whereas it was the testimony of Clorfine and Burks that it was Crenshaw who was so armed. Similarly, the original report contained no detailed or specific description of Crenshaw, other than the fact that he was one of three colored men, and it was Rafferty's testimony that Clorfine was unable to give a description on the evening on the crime. Clorfine, however, testified he had told the police that Crenshaw was short, old and wearing darker clothes than the other man he saw (Riles), and he has at all times admitted that it was Griffin whom he had not seen and could not identify. There is no showing in the record as to which of the four eyewitnesses supplied Rafferty with the precise information contained in his report,

thus there is no firm basis for a contention that Erman made inconsistent statements concerning the color of Griffin's jacket, or that Clorfine and Burks contradicted themselves when they testified it was Crenshaw who was armed with a knife. While Rafferty's report and testimony was in conflict with the testimony of the eyewitnesses in the respects stated, the conflicts afford no basis for a finding that the eyewitnesses contradicted themselves or made inconsistent statements as to identification. Such conflicts, in turn, go to the credibility of the witnesses and the weight to be afforded their testimony, a function that rested in the trial court.

In the original offense report prepared by Rafferty the robbers were described as three colored men whom he designated as numbers 1, 2 and 3. As to number 3, whom the eyewitnesses subsequently identified as Crenshaw, there appeared only the notation: "No description." In November, 1953, five weeks before the trial and four months after the robbery, Rafferty supplemented the report by adding to the number 3 designation the following words: "Other than he was colored, appeared about 50, no further description. Held open knife in hand. Can identify all three." According to Rafferty he obtained this information from Erman and Clorfine following the robbery, and again when he talked to them in November, but did not add it to his report until the latter occasion. No objection was made to the reception of the report in evidence, nor is it now claimed that it was error for the court to admit it. Defendants urge, rather, that Rafferty's action was tantamount to a fabrication of evidence which weakens all other evidence of identification. While we are constrained to remark that the supplementation of an offense report is a practice not to be condoned under circumstances such as were present in this case, we do not agree with the conclusions reached by defendants. No attempt was made to mislead the court by making it appear that the added words

were a part of the original entries, inasmuch as it appears they were typewritten upon a carbon copy of the original report. Further, it appears that Rafferty had shown the offense report to Crenshaw's counsel before he supplemented it, thus obviating any purpose of deceiving counsel. In view of the fact that both Erman and Clorfine had made positive identification of Crenshaw months before the additions were made to the report, and in further view of the testimony showing that both witnesses were able to view Crenshaw under favorable circumstances at the time of the crime, and to positively identify him six days later, we cannot say that Rafferty's confusion, or the shortcomings of his report, are such as to render Crenshaw's identification unworthy of belief.

A jury having been waived, it was the province of the trial court to determine the weight and credibility of the testimony, to resolve the conflicts therein, and to make its findings of guilt or innocence. In view of the opportunities of observation enjoyed by the trial court, its judgment should not be set aside by this court unless the proof is so unsatisfactory or implausible as to justify a reasonable doubt as to a defendant's guilt. (*People* v. *Williams,* 12 Ill.2d 80; *People* v. *Iannacco,* 11 Ill.2d 55.) From an analysis of the entire record, particularly the evidence relating to identification and alibi, it is our conclusion that the proof was sufficient to satisfactorily establish defendants' guilt beyond a reasonable doubt.

Defendants next rely upon alleged trial errors as grounds for reversal, their first contention being that the court committed reversible error when it relied upon Erman's conclusion as to their guilt, and when it disregarded the proper standards for the evaluation of identification testimony. After Erman had been examined and extensively cross-examined, the court interposed and received negative answers to questions which sought to elicit whether the witness entertained any doubts as to the identity of the

defendants. Because of these questions, and because the court remarked in answer to an objection that the question to be decided was whether there was any doubt, defendants now charge the court delegated to Erman its judicial function of determining their guilt. Such a conclusion is arrived at only by substituting the word "guilt" for the term "doubt" in the court's question and remarks, and is completely untenable. Later, at the close of all the proof, the court appraised Erman's testimony as follows: "He was as clear as he could be, and as positive as he could be, as logical as he could be, and you could not impeach his testimony in any degree." From this language defendants infer that the court made Erman's testimony the sole basis for its finding of guilty without regard to all other evidence in the record. We do not agree that the record may be so interpreted. Taking the court's statement in context with his entire summation, instead of isolating it as defendants have done, it clearly appears that the court gave due consideration to all the evidence. While the remarks do show that the court attached great weight to Erman's testimony, and was impressed with its steadfast nature, they further show that the court took into consideration the corroborating testimony of Clorfine, the opportunity of Clorfine and Erman to observe the robbers, and implausibilities in the defendants' alibi. On the entire record, the claims of defendants under this point are without justification or foundation.

Next it is urged that the court assumed the position of an advocate by examining witnesses for the prosecution, that it failed to remain fair and impartial, and that it unduly curtailed cross-examination by defense counsel. The record reveals, however, that the court sought by the questions and rulings complained of only to eliminate confusion and to curtail repetition brought about by the circumstance that the principal witnesses for the prosecution were each cross-examined by three separate defense counsel. Under

the trial conditions reflected by the record we cannot say that the court abused its discretion in examining witnesses, or reflected hostility toward the defendants, or that its action of curtailing repetition during cross-examination was prejudicial to the defendants' cause. *People* v. *Gilbert,* 12 Ill.2d 410; *People* v. *Filipak,* 322 Ill. 546.

Finally, defendants contend that it was error for the court, at the request of the prosecution, to call McGowan as a court's witness. First, because there was no showing that a miscarriage of justice would result through the failure of McGowan to testify and, second, because the prosecution failed to substantiate its assertion that McGowan's veracity and integrity were doubted. These objections were not made at the trial, thus giving the court no opportunity to hear or pass upon them, and are therefore not properly before us for review. (*People* v. *Rudecki,* 309 Ill. 125; *People* v. *Jenko,* 410 Ill. 478; *United States* v. *DeMarie,* (7th Cir. 1955) 226 F.2d 783.) Apart from this, we observe that the calling of the court's witness was attended by all the prerequisites fixed by the decisions of this court. See: *People* v. *Robinson,* 14 Ill.2d 325.

Finding no reversible error, the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*