People of the State of Illinois, Plaintiff-Appellee, v. William A. Oster (Impleaded), Defendant-Appellant.

Gen. No. 49,753.

First District, Fourth Division.

March 25, 1966.

Anna R. Lavin, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Klein, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

The Criminal Division of the Circuit Court of Cook County in a bench trial found the defendant, William A. Oster, guilty of the crime of armed robbery, and sentenced him to serve a term of not less than three nor more than six years in the State Penitentiary. The defendant appeals from that judgment on the grounds that the evidence did not support the finding of guilty beyond a reasonable doubt; that the trial court deprived him of the right to examine a statement which had been given to the police by one of the People's witnesses; that the court failed to consider the uncontradicted testimony of two disinterested witnesses; and that the court demonstrated prejudice against the defendant's witnesses.

The indictment charged that Douglas Aldridge, Edward J. Somerville, Byron A. Benton and the defendant, by force and while armed with a dangerous weapon, took $600 from the person and presence of Judith Towne. Aldridge pleaded guilty. At the conclusion of the People's case the trial judge dismissed the charges as to Somerville and Benton.

From the record it appears that the testimony at the trial showed that three or four men armed with guns held up the Club Alpine, its owner and occupants, at about 1:00 a. m., on May 12, 1963, taking $251 from the cash register and money and jewelry from the owner and occupants. During the robbery the persons in the Club were made to lie down on the floor, and one customer—a police officer, Harold W. Foster—was bludgeoned to his knees when he hesitated to lie down in accordance with the order given by one of the robbers. Officer Foster, employed by the City of Chicago Heights, Illinois, testified as follows: He was off duty in the Club Alpine, sitting at the west end of the bar and approximately 45 feet from the front door. At about 10 minutes after 1:00 a. m., he noticed a car pull up to

the west end of the Club; he observed the car through the window just behind him and about five or six feet away from him; he saw a man get out of the car, come up to the window and look in, which man he identified as the defendant, William A. Oster. In a few minutes there was a lot of shouting and the police officer was ordered by one of the men (who had a .38-caliber pistol in his hand) to lie on the floor, which he did not do. Officer Foster identified the other two men in the tavern as defendants Benton and Somerville. The man with the pistol (Aldridge), using profane language, again ordered the officer to lie on the floor and struck him on the head with the pistol barrel, and continued to strike him until he went down to the floor on one knee. His wallet was taken from him. After he was struck the last time the officer fell to the floor and remained in a prone position.

Mrs. Mattie Hull, co-owner of the Club Alpine, testified as follows: At 1:00 a. m. on May 12, she was in the back room of the Club when a masked man with a gun came into the door leading to the public area of the Club and announced that it was a stickup. He ordered her, with her daughter Nellie, and her future son-in-law Frank Klip, to go into the bar. They went into the bar through a door located immediately behind the center of the bar, at which time Judy Towne was tending the bar, standing behind it, alone. One man was standing near the door; he was not masked nor did he carry a gun. Another man, masked and carrying a gun, was in the barroom. Mrs. Hull testified that there were three men involved in the holdup, and that she and her companions were made to lie on the floor, where they stayed until the holdup men left.

Mrs. Hull's daughter had married Frank Klip between the time of the holdup and the trial. She corroborated the testimony of her mother that they were ordered to go into the bar and lie down on the floor. She further

testified that Oster was standing in the middle of the barroom about five feet from the public entrance, which was in the center of the building; that he was not wearing a mask or hat; that Aldridge had a gun and Oster was waving a gun and using foul language. She could not testify as to whether or not the third man had a gun, but she did state that to her knowledge there were three men involved in the holdup—Aldridge, Oster and the third man at the west end of the bar. She further testified that she had never seen Oster before the night of the robbery, and had not served him at the Club Alpine two weeks before the trial.

■ Frank Klip testified that Oster was standing in the center of the room about 14 or 15 feet away from him, on the right side of the bar and not by the door. He did not specifically testify that Oster had a gun. Both Frank and Nellie Klip testified that Oster's hair appeared to be lighter at the time of the trial than it was at the time of the holdup. Officer Foster testified that he did not at any time see Oster inside the tavern. This could be explained by his position on the floor. The defense here argues that the witnesses' identification of Oster as one of the participants in the holdup was in conflict and therefore not sufficient to sustain conviction. This was a matter of credibility for the trial court to resolve.

Several lineups were held at the Oaklawn, Illinois, police station, the last of which was held on June 13, 1963. Oster was in that lineup and was identified by Foster and the Klips. Oster had been arrested on May 18, and there were lineups at that time. Judy Towne was present at a lineup on that date and also identified Oster. Byron Benton testified that he was in a lineup at the Oaklawn station on May 18, 1963, on which date he had been in two or three lineups; that in the first two Oster was not included, but later in the morning Oster was in a lineup. Somerville testified that he was

arrested May 17 or 18, 1963; that Oster was in a room with him in the station; that he (Somerville) went through the lineup five or six times and that each time Oster was in the lineup with him. Oster testified that he was arrested the 17th or 18th of May and went through four or five lineups. Frank Gilbert, a police officer of the Oaklawn Police Department, testified that he arrested Oster on May 18, 1963. The police records did not show who the individuals were in the various lineups. There was no positive testimony either way as to which lineups Oster had been in.

To summarize the evidence, Officer Foster and the Klips testified that they did not see Oster at the lineups on May 18 in the Oaklawn police station. Benton testified that Oster was not in the first two lineups on that date. Somerville and Howard Craig (who were in those lineups at various times) and Oster each testified that Oster was present at all the lineups on that date. The point the defendant stresses is that from the evidence it should be determined that Oster was at all of the lineups and was not identified by any of the holdup victims.

 It is the province of the trial judge in a bench trial to determine the weight and credibility of the testimony, to resolve conflicts, and to make findings of fact. The trial judge has the opportunity to observe the witnesses, and his judgment should not lightly be set aside unless the proof is so unsatisfactory or improbable as to present a reasonable doubt as to the guilt of the defendant. People v. Clark, 30 Ill2d 216, 195 NE 2d 631; People v. Johnson, 47 Ill App2d 441, 198 NE2d 173; People v. Harvey, 62 Ill App2d 480, 210 NE2d 818; People v. Lyons, 65 Ill App2d 139, 212 NE2d 512. It is also the law that the positive testimony of one credible witness is sufficient to sustain a conviction. People v. Crenshaw, 15 Ill2d 458, 155 NE2d 599; People v. Soldat, 32 Ill2d 478, 207 NE2d 449.

 While there were certain conflicts in the evidence in the instant case, it was the duty of the judge to resolve the conflicts. The evidence presented was sufficient to prove the defendant guilty beyond a reasonable doubt.

 The defendant here argues that the trial court deprived him of an established right by prohibiting him from looking at a signed statement which Frank Klip had previously made to the police. The record indicated that during the trial the State's Attorney promptly handed the statement to the defense counsel upon request, but that the trial judge admonished the defendant, Oster, to refrain from looking at it. The defendant argues that the court violated the rules laid down by the United States Supreme Court and the Illinois courts, and cites in support of that contention the cases of People v. Wolff, 19 Ill2d 318, 167 NE2d 197, and Jencks v. United States, 353 US 657. These cases stand for the proposition that the defense has a right to be given statements made by witnesses to the police or prosecution. In the instant case the defendant was represented by counsel retained by him. The statement was handed to the defense counsel and not to the defendant. The court said that the defendant should refrain from looking at the statement, but that counsel might look at it. This was not a serious error, as there was nothing which would indicate that the court would not permit counsel, having read the statement, to consult with his client with reference to it. The trial court has the right to control the trial of a case and prevent disorder, and his ruling was not reversible error.

The defendant took the stand in his own behalf and denied that he had anything to do with the robbery. He stated that he was married and lived with his wife and two children; that on the day of the robbery he was employed on two jobs: at one job he worked from 11:00

p. m. to 7:00 a. m.; at the other job he started at 7:30 a. m., and worked until 5:00 or 5:30 p. m. He stated that on the day of the robbery he had worked and arrived home at about 4:00 p. m.; that he was supposed to work that evening but did not, and went to bed instead. One of his employers took the stand and testified that Oster had worked for him since April, that he was a satisfactory employee, and that one of his duties was to make bank deposits which sometimes contained cash. James E. Sweet testified that he knew Oster and knew Nellie and Frank Klip, having tended bar for the Klips three months before the robbery. He further testified that on a Friday, about a week before the trial, he was in the tavern with Oster and Armalis; that he introduced both men to the girl known as Nel (Nellie Klip); that she did not make any statement that she recognized Oster, merely saying that she was pleased to meet them; and that she served Oster a drink. Armalis also testified to the same effect, except that he identified the girl to whom they were introduced as "Kitty or Kate—Mickey," and said that she did not indicate that she knew Oster. Oster also testified to the meeting in the tavern. Mrs. Klip testified that she was sure she did not serve Oster drinks in the tavern after the robbery and that if she had she would have recognized him. The testimony of Sweet, Armalis and Oster, standing by itself, is inconclusive, nor does it appear that Mrs. Klip's denial of the incident was impeached or rendered incredible by the defense. At best, her denial went to the question of her credibility, which was a question of fact to be determined by the trial court. In People v. Clark, supra, the court said:

> "Where the cause is tried without a jury, it is the function of the trial court to determine the credibility of the witnesses and the weight to be afforded their testimony, and where the evidence

is merely conflicting a reviewing court will not substitute its judgment for that of the trier of fact. . . ."

██ ██ The defendant also argues that by its remarks the trial court indicated prejudice against the defendant. The court admonished one of the defendant's witnesses who was testifying as to what happened at the various lineups, by telling him that he was under oath and stating that the witness knew what it meant for him if he didn't tell the truth. The statement by the court was not proper; however, standing alone, it does not amount to reversible error.

The judgment of the Criminal Division of the Circuit Court is affirmed.

Affirmed.

DRUCKER, P. J. and ENGLISH, J., concur.